FAULKNER, Justice.
Patricia Ann and Jackie Leon Tant brought an action against the Women’s *275 Clinic of Anniston and its employee, Dr. Alig, for medical malpractice. Dr. Alig died prior to trial of the action. In the first trial, the trial judge granted a directed verdict against the Tants. We reversed the directed verdict in Tant v. Women’s Clinic, 382 So.2d 1120 (Ala.1980). The cause was remanded and a second trial began.
During the second trial, the widow of the deceased doctor, Mrs. Alig, appeared seated at the Clinic’s table during voir dire. Counsel for the Tants objected that her presence was prejudicial. The trial judge permitted Mrs. Alig to remain seated at the table during voir dire. After the jury was chosen, the Tants renewed their objection to Mrs. Alig’s presence at the Clinic’s table during the trial. The trial court reserved ruling on the question until after lunch.
When the parties returned from lunch, the attorneys for the Women’s Clinic informed the court that the Women’s Clinic had appointed Mrs. Alig as its agent to represent it at trial. The trial judge overruled the Tants’ objection to Mrs. Alig’s presence at the Clinic’s table during trial.
The jury rendered a verdict in favor of the Clinic. The Tants moved for a new trial, which the trial court denied. The Tants contend that the trial court erred in permitting Mrs. Alig to be present at trial and erred in a ruling admitting evidence of Dr. Alig’s character.
The Tants contend that counsel for the Clinic directed attention to Mrs. Alig in order to prejudice the jury. The Tants note that the attorneys for the Clinic referred to Mrs. Alig during voir dire examination and closing argument. One alleged reference during voir dire was made by the judge, not by counsel, and merely told the jury that Mrs. Alig was the executrix of Dr. Alig’s estate, and had no direct interest in the litigation. The second reference to Mrs. Alig during voir dire was to ask if any of the jurors were acquaintances of Dr. or Mrs. Alig. It is certainly not error to question a juror about his or her relationship with a person related to an action.
The second time counsel for the Clinic allegedly sought to prejudice the jury was in his cross-examination of Mrs. Alig. Nevertheless, it must be noted that it was counsel for the Tants that called Mrs. Alig as a witness and examined her concerning her relationship to the Clinic. The Tants put the question of Mrs. Alig’s relationship with the Clinic in issue. They asserted that the purpose was to develop the record for appeal. This could have been done outside the presence of the jury, if the Tants wished to avoid prejudice.
The third reference by the Clinic to Mrs. Alig was in closing argument. Even if this reference were prejudicial, the Tants failed to object. We will not review error which is not objected to at trial.
The Tants also allege that Mrs. Alig’s mere presence at the trial was prejudicial. They do not allege that Mrs. Alig engaged in any conduct, such as weeping or so forth, that is likely to prejudice a jury. Whether to permit relatives of a deceased to occupy a seat in full view of the jury is within the sound discretion of the trial court, and the court’s ruling will not be reversed on appeal in the absence of abuse of discretion. Lehr v. State, 398 So.2d 791 (Ala.Cr.App.1981); Lindsey v. Lindsey, 361 So.2d 601 (Ala.Civ.App.1978); Nationwide Mutual Insurance Co. v. Smith, 280 Ala. 343, 194 So.2d 505 (1967). There is no evidence that the presence of Mrs. Alig prejudiced the jury. We hold that the trial judge did not abuse his discretion in permitting Mrs. Alig to be present at trial.
The Tants also contend that the trial judge erred in admitting evidence of Dr. Alig’s “character.” The allegedly objectionable statement is as follows:
“If you will think about that, that must be the law. That’s got to be the law, or else a doctor couldn’t practice medicine. We couldn’t even practice our professions. You couldn’t live a very (inaudible) life, if you were going to be held to a duty of care where you’ve got to make an educated judgment, and if you miss it, say you’re malpractice, we’re going to run *276 your reputation right down the river whether you’re dead or not—
“MR. COLEMAN: Your Honor, we object to this line of argument. And Dr. Alig is not a permissible argument.
“THE COURT: State your grounds, Mr. Coleman.
“MR. COLEMAN: He’s talking about reputation; reputation was never concerned and argument has not been brought out — any reputation. And we ask the Jury be instructed to disregard that part of the argument.
“THE COURT: The Court was not listening all that closely, Mr. Allen, if that was the thrust of the argument, I’ll sustain.
“MR. ALLEN: The thrust of the argument is that I said that a malpractice suit acts to destroy and impede a physician’s reputation. And the Woman’s [sic] Clinic reputation in Anniston, Alabama. That’s what I’m going to say. [emphasis added]
“MR. COLEMAN: We object, Your Hon- or, to him amplifying this further argument, because reputation is not a matter to consider.
“THE COURT: It’s not a matter of consideration and I think the statement is a correct statement, however. I’m going to overrule the objection. It’s not a legal issue involved in the case, [emphasis added]
“MR. COLEMAN: We except to the Court’s ruling.
“THE COURT: All right.
“MR. ALLEN: (continuing closing argument)
“Of course, a malpractice suit damages a doctor’s reputation and his name. And it damages the Woman’s [sic] Clinic, too. [emphasis added]”
Clearly, the language concerning the reputation of the Clinic and Dr. Alig is not character evidence. The statement did not assert any general reputation, any specific acts, or any evidence that might be described as character evidence. The mere use of the word “reputation” does not convert a statement into character evidence. See generally Gamble, McElroy’s Alabama Evidence §§ 25.01-45.01 (3d ed. 1977).
The judgment below is affirmed.
AFFIRMED.
TORBERT, C. J., and ALMON, EMBRY and ADAMS, JJ., concur.